UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MIKE WHITE,

                     Plaintiff,

    -against-

ERIC GUTWEIN, C. STORY, D. VENETTOZZI,
and T. GRIFFIN

                    Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _7/28/2022_

Case No. 20-cv-4532 (NSR)

ORDER & OPINION

**NELSON S. ROMÁN, United States District Judge:**

*Pro se* Plaintiff Mike White ("Plaintiff"), an inmate at the New York State Department of Corrections and Community Supervision ("DOCCS"), Green Haven Correctional Facility, commenced this action on June 9, 2020, pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging 8th Amendment and 14th Amendment violations of his constitutional rights by DOCCS employees Eric Gutwein, C. Story, D. Venettozzi, and T. Griffin (together, "Defendants"). (ECF No. 2.) Presently before the Court is the Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure § 12(b)(6) ("Rule 12(b)(6)"). (ECF Nos. 30, 37.) For the following reasons, the Defendants' motion to dismiss is GRANTED without prejudice.

## BACKGROUND

The following facts are drawn from Plaintiff's Complaint ("C") and assumed as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is a New York State inmate incarcerated at the Green Haven Correctional Facility. (C at pp. 4, 13.) On March 10, 2017, Plaintiff was transferred to a Security Housing Unit ("SHU"). (C at p. 13.) The following day, he was issued a Misbehavior Report for violating multiple disciplinary rules of the correctional facilities under New York State law. (*Id.*) Plaintiff was

charged with "violating rules (109.10 [of N.Y. Comp. Codes R. & Regs. tit. 7, § 270.2]) Out of Place, (109.12) Movement Regulation Violation, (112.20) Delaying Count." (*Id.*)

In anticipation of the disciplinary hearing, Offender Rehabilitation Counselor C. Story ("Story") was assigned to serve as Plaintiff's assistant from March 10 to March 16, 2017. (*Id.*) Despite Plaintiff's request, Story failed to procure documents and interview a witness. (*Id.*) Story "did not[h]ing" for him because, as Story claimed to Plaintiff, "Gutwein told her not to." (*Id.*) On March 16, 2017, Plaintiff attended a Tier III special hearing presided by Hearing Officer Eric Gutwein ("Gutwein"). (*Id.*) At the hearing, Gutwein "denied documentary [and] witness evidence," "instructed [the] assistant not to give [Plaintiff] anything," and was not impartial. (*Id.*) Gutwein found Plaintiff guilty of multiple infractions and sentenced him to 150 days of SHU confinement, the loss of good time, commissary, packages, and use of phone privileges. (*Id.*) The sentence imposed was outside of the guideline range. (*Id.*) Plaintiff subsequently appealed Gutwein's determination to the Director of Special Housing D. Venettozzi ("Venettozzi"), who, after review, affirmed the hearing officer's conclusions. (C at p. 14.) T. Griffin ("Griffin"), the Superintendent of the Green Haven Correctional Facility, did nothing to intervene on Plaintiff's behalf. (C at p. 15.) Plaintiff alleges Griffin should have known of Venettozzi's misconduct. (*Id.*)

While serving the sentence imposed by Gutwein in the SHU, Plaintiff was violently assaulted in the recreation yard by a "known violent mentally ill prisoner," who has assaulted other prisoners "prior and subsequent" to that date. (C at p. 14.) The prisoner punched Plaintiff in the face "a number of times," threw him to the ground and effected "immense pain" in his already-injured hip, and repeatedly banged his head, causing him to momentarily lose consciousness. (*Id.*) Though another prisoner tried to pull the assailant away, the assault continued until officers intervened by handcuffing both the assailant and Plaintiff. (*Id.*) Plaintiff was issued a disciplinary

infraction for fighting, which was dismissed after a hearing. (*Id.*) As a result of the assault, Plaintiff sustained several injuries, including "loss of consciousness, concussion, knot on the front and back of head, busted lip and nose, swollen eye, pain in hip, leg and back." (C at pp. 8, 14.)

Following the assault, Plaintiff was placed in the SHU confinement in a  cell located between the "mentally ill" inmate who had assaulted him and "another violent mentally ill person." (C at p. 15.) Both of the neighboring inmates were allegedly "known throwers of feces, urine," who rendered "air in the area smell of excreta." (C at p. 14.) As a result, Plaintiff "was deprived of sleep for months." (*Id.*) Plaintiff also alleges to have "missed Ramadan because of this [SHU] confinement." (C at p. 15.)

On February 14, 2018, prior to the instant action, Plaintiff commenced an Article 78 proceeding in New York State Supreme Court, Dutchess County, seeking dismissal of the alleged disciplinary infractions, which was granted in its entirety. (*Id.*) To date, the infractions have yet to be expunged from Plaintiff's records. (*Id.*)

## PROCEDURAL HISTORY

On June 9, 2020, Plaintiff, proceeding *pro se*, commenced the instant action pursuant to Section 1983 alleging violations of his federal constitutional rights. (ECF No. 2.) On March 14, 2021, Defendants served their Motion to Dismiss Plaintiff's Complaint for failure to state a claim on which relief may be granted—pursuant to Rule 12(b)(6). (ECF Nos. 30, 37.) On August 9, 2021, Plaintiff filed a memorandum of law in opposition to the Defendants' motion to dismiss. (ECF No. 34.) On September 7, 2021, the Defendants filed a reply memorandum of law in support of their motion to dismiss. (ECF No. 41.)

**LEGAL STANDARD**

**I.      RULE 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), the Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The Court must take all material factual allegations as true and draw reasonable inferences in favor of the non-moving party. *Id.* at 678. Yet it is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 662 (quoting *Twombly*, 550 U.S. at 555); *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). The critical inquiry for evaluating a motion to dismiss is whether the plaintiff has pleaded sufficient facts to nudge the claims "across the line from conceivable to plausible" and allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

When considering a motion to dismiss under Rule 12(b)(6), the Court is generally confined to the facts alleged in the complaint. *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). In actions commenced by *pro se* plaintiffs, however, the Court may consider factual allegations made by the *pro se* plaintiff outside the complaint, such as in his memorandum of law in opposition to the Defendants' motion to dismiss, to the extent that they are consistent with the allegations in the complaint. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013); *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987).

For a *pro se* plaintiff, the Court should construe the pleadings liberally and hold them to a less stringent standard than complaints written by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Furthermore, the Court must interpret a *pro se* plaintiff's pleadings "to raise the strongest arguments that they suggest." *Harris v. City of N.Y.*, 607 F.3d 18, 24 (2d Cir. 2010) (internal citation omitted). Nevertheless, a *pro se* plaintiff's pleadings must still "state a plausible claim for relief" and contain sufficient factual allegations to "raise a right to relief above the speculative level." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013); *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010). The Court's duty to construe the Complaint liberally and favorably is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## II.    SECTION 1983

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution" or statutes. *Castilla v. City of N.Y.*, No. 09 Civ. 5446 (SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

Notably, "a defendant in a § 1983 action may not be held liable for damages for

constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). Instead, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016), *cert. denied sub nom.*, *Brooks v. Pataki*, 137 S. Ct. 380 (2016).

## DISCUSSION

Interpreting the Complaint liberally, Plaintiff appears to be bringing claims of malicious prosecution, violation of religious freedom, wrongful confinement, violations of his Eighth Amendment rights for failure to protect, failure to train, and the conditions of his confinement, and violation of his Fourteenth Amendment procedural due process rights. (*See* C at p. 3.)

## I.   EIGHTH AMENDMENT: FAILURE TO PROTECT

Plaintiff claims that Defendants violated his Eighth Amendment rights by failing to protect him from assault by a "known violent mentally ill prisoner" while in the recreation yard. (C at p. 14.) The Defendants argue that the pleaded facts in Plaintiff's Complaint fail to support a valid claim of Defendants' failure to protect. ("M.T.D.," ECF No. 38 at 2.)

The Eighth Amendment prohibits the unnecessary and wanton infliction of pain and imposes a duty on prison officials to take "reasonable measures to guarantee the safety of inmates" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994); *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). Among other things, prison officials bear "a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 825.

To assess a failure to protect claim, the Court applies a two-pronged framework of analysis: first, the conditions of the alleged deprivation must be "sufficiently serious under an objective

standard" such that Plaintiff's conditions pose a "substantial risk of serious harm" to him; second, "the charged prison officials [must have] acted with a sufficiently culpable state of mind," including (but not limited to) deliberate indifference to the inmate's safety. *Knowles v. N.Y. City Dep't of Corr.*, 904 F. Supp. 217, 221 (S.D.N.Y. 1995) (citing *Farmer*, 511 U.S. at 834); *see Hayes*, 84 F.3d at 620. Put differently, a successful failure to protect claim typically requires the prisoner-plaintiff to "establish both that a substantial risk to his safety actually existed and that the offending prison officials knew of and consciously disregarded that risk," or otherwise demonstrate "evil intent, recklessness, or at least deliberate indifference." *Baines v. City of N.Y.*, No. 01 Civ.2645 PKC GWG, 2004 WL 213792, at *6 (S.D.N.Y. Feb. 5, 2004); *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985).

### A.    *Objective Prong.*

The objective prong for a failure to protect claim requires the prisoner-plaintiff to show that he was under "an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (internal quotation marks and citations omitted). Factors for determining substantial risks of serious harm include "the nature of the prison population with whom [the plaintiff] was incarcerated," and "whether there was specific information ahead of time suggesting that the plaintiff's safety was in jeopardy." *Vickers-Pearson v. City of N.Y.*, 18 Civ. 8610 (KPF), 2020 WL 5732028, at *5 (S.D.N.Y. Sept. 24, 2020) (internal quotation marks omitted). Accordingly, to prevail on Eighth Amendment failure to protect claims arising from inmate-on-inmate violence, the plaintiff should typically "allege that the defendants knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against the plaintiff." *Thomas v. DeMeo*, No. 15-CV-9559 (KMK), 2017 WL 3726759, at *8 (S.D.N.Y. Aug. 28, 2017) (quoting *Parris v.*

*N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013)). Alternatively, prison officials have been held to a duty to protect the inmate population in general from risks—such as particular inmates with a "longstanding, pervasive, well-documented history of similar attacks"—provided that they have been "exposed to information concerning the risk." *Stephens v. Venettozzi*, 13-CV-5779 (RA) (DF), 2016 WL 929268, at *21 (S.D.N.Y. Feb. 24, 2016), *report and recommendation adopted sub nom. Stephens v. Venettozzi*, No. 13 Civ. 5779, 2016 WL 1047388 (S.D.N.Y. Mar. 10, 2016) (quoting *Farmer*, 511 U.S. at 842) (internal quotation marks omitted).

For the objective prong, Plaintiff's allegations in the Complaint fall short of the requisite standard to give rise to a plausible Eighth Amendment failure to protect claim. First, reading the Complaint liberally, Plaintiff appears to allege there was a risk of damage to his physical health because his assaulter's mental illness had been "known." (C at p. 15.) Even assuming that Plaintiff is alleging that the assaulter's mental illness was well-known by everyone in the prison (including Plaintiff and the officials), there is no allegation that the assaulter had previously attacked Plaintiff or otherwise threatened him prior to the assault. Second, Plaintiff appears to allege that there is a "longstanding, pervasive, well-documented" history of similar attacks against other inmates perpetuated by the assaulter. Specifically, Plaintiff alleges that "[t]he one who assaulted [him] had other assaults on prisoners prior and subsequent to [Plaintiff's] assault in SHU." (C at p. 15.) Plaintiff's statement, however, is still inadequate for the objective prong. It is compendious, conclusory, lacking in specificity, and omitting details of the unspecified number of assaults, who was assaulted, and when. Additionally, the Court can hardly infer from these facts that Plaintiff was objectively under "a substantial risk to his safety," as opposed to just a merely possible one. *Baines*, 2004 WL 213792, at *6. Accordingly, the Court finds that Plaintiff's allegations do not meet the objective prong of a failure to protect claim.

## B.  Subjective Prong.

For the subjective prong, Plaintiff must allege that the official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. The requisite state of mind is not "purposely" or "knowingly," namely, that the official acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 837. Instead, it suffices for Plaintiff to allege that Defendants "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [the inmate-plaintiff] even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.'" *Quinones v. Rollison*, No. 18-CV-1170 (AJN), 2020 WL 6420181, at *7 (S.D.N.Y. Nov. 1, 2020) (quoting *Darnell*, 849 F.3d at 35).

For failure to protect claims that involve risks of harm posed by other inmates, courts typically deem the subjective prong satisfied if the defendant-officials had received—from either the plaintiff or other inmates—a sufficiently detailed account of the particular assaulter's specific threats to the plaintiff *or* past instances of aggression. *Villa v. Westchester Cty.*, No. 19-CV-428 (KMK), 2020 WL 4505968, at *7 (S.D.N.Y. Aug. 5, 2020). For example, a claim of failure to protect may be upheld if the plaintiff "presented evidence that he made [the defendant] aware of a specific threat to his safety and that several hours later he was seriously assaulted." *Beckles v. Bennett*, No. 05 Civ. 2000 (JSR), 2008 WL 821827 at *17 (S.D.N.Y. Mar. 26, 2008). Consequently, the key inquiry for the subjective prong in such scenarios is whether the defendant-official "knew, or should have known" of the risks from another violent inmate and then "recklessly failed to act with reasonable care to mitigate" the substantial risk of harm. *Quinones*, 2020 WL 6420181 at *7.

In the present case, the Court will apply the subjective-prong analysis to each Defendant. Notably, Plaintiff did *not* name as Defendant any official or guard assigned to or

responsible for his SHU unit. Among the Defendants, Gutwein is a Special Hearing Officer and Story is an Offender Rehabilitation Counselor. Based on their titles, there is no reasonable expectation that Gutwein and Story would know about the risks of harm the assaulter could have on Plaintiff. Indeed, Plaintiff alleges no facts from which this Court can infer that Gutwein or Story knew, or should have known, the assaulter's past pattern of violence or that they contributed to the ensuing risk to Plaintiff.

By contrast, when interpreted liberally, Plaintiff seems to allege that Defendant Griffin knowingly or recklessly disregarded a particular risk to Plaintiff's safety. Plaintiff alleges that "Supt. Griffin had a duty not to place a known violent mentally ill inmate who had exhibited assaultive/battery behavior on multiple occasions in SHU, to mingle with other prisoners." (Pl. Opp. at 3.) While this statement is by itself a conclusory claim of Griffin's legal duty, when interpreted liberally and in Plaintiff's favor, it suggests that Griffin actually knew that the assaulter was "violent" and "mentally ill," and "had exhibited assaultive/battery behavior on multiple occasions in SHU." (*Id.*) Under the circumstances, the Court may infer Defendant Griffin's actual knowledge from Plaintiff's alleged facts "showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," which could suggest Griffin "had been exposed to information concerning the risk" from the assaulter. *Farmer*, 511 U.S. at 842. Furthermore, Plaintiff noted that Griffin decided to isolate the assaulter from other inmates after the latter's "fourth or fifth assault/battery on prisoners," implying that Griffin was aware of the situation at the time of the decision (though it remains an open question whether Griffin knew of it at the time of the assault on Plaintiff). (Pl. Opp. at 3.) Taken together, Plaintiff appears to have alleged enough facts to support that Griffin "knew or should have known" of the risk of harm.

However, Plaintiff still fell short of alleging enough facts for an inference that Griffin recklessly disregarded the substantial risk of harm "by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Specifically, there was no allegation of a history of altercations or threats between Plaintiff and the assaulter personally. Thus, under the *Farmer* framework, the risk of harm posed by the assaulter was "generalized" to the entire inmate population, such that "all prisoners in his situation face such a risk." *Id.* at 842. To plead a failure to protect claim under the theory of generalized risk of harm, "a plaintiff must allege that the defendant knew of a history of attacks similar to that suffered by the plaintiff, and that the measures they should have taken to prevent the reoccurrence of such attacks would have prevented the harm to the plaintiff." *Stephens*, 2016 WL 929268, at *21. Here, Plaintiff failed to raise any such measures or any factual allegations from which the Court may infer a measure, other than what Griffin did in response to the risk posed by the assaulter, i.e., isolating him from other inmates. (Pl. Opp. at 3.) To the extent Plaintiff attempts to allege that Griffin should have done so earlier in time to prevent Plaintiff's own assault, rather than after the assaulter's "fourth or fifth assault/battery on prisoners," Plaintiff raised no factual allegation implying that Griffin knew of the risk posed by the assaulter before the attack on the former. (*Id.*) Furthermore, Plaintiff alleges no facts to suggest that Griffin "had the ability to take some action that would have significantly alleviated" the risk and yet refused to remedy the situation. *Shepherd v. Hogan*, 181 F. App'x 93, 96 (2d Cir. 2006). Additionally, Plaintiff did not otherwise allege that he suffered from a higher risk of harm posed by the assaulter than the generalized risk to the inmate population at large and raised no reason why his personal safety from the assaulter should receive special consideration vis-à-vis other inmates'. Accordingly, Plaintiff cannot satisfy the subjective prong either: even though his factual

allegations may show Griffin's actual knowledge of the risk of harm, they are insufficient to imply that Griffin failed to act with reasonable care to mitigate that risk.

In conclusion, Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's failure to protect claim pursuant to the Eighth Amendment is GRANTED and this claim is dismissed without prejudice.

## II.    EIGHTH AMENDMENT: FAILURE TO TRAIN

Plaintiff's Complaint states "failure [. . .] to train" as a separate cause of action against the Defendants, alongside the failure to protect claim.

A governmental entity's failure to adequately train its employees about the legal duty to avoid violating citizens' constitutional rights may indeed give rise to a Section 1983 action. *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (quoting *Monell v. N.Y. City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978)); *see B. Braxton/Obed-Edom v. City of N.Y.*, 368 F. Supp. 3d 729 (S.D.N.Y. 2019). However, as another court in this District has noted, "such claims may only be made against a municipality," rather than individual defendants. *Rodriguez v. City of N.Y.*, 649 F. Supp. 2d 301, 307 (S.D.N.Y. 2009).

In the present case, the Complaint includes allegations against Defendants who are all individual state government officials and include no governmental entity—much less a *municipal* entity. Therefore, the failure to train claim is inapplicable and accordingly DISMISSED without prejudice.

## III.    EIGHTH AMENDMENT: CONDITIONS OF CONFINEMENT

Pursuant to Section 1983, Plaintiff further alleges that he was subjected to unconstitutionally cruel conditions of confinement in violation of his Eighth Amendment rights.

The Cruel and Unusual Punishments Clause of the Eighth Amendment requires prison

officials to "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832. To establish an Eighth Amendment claim based on conditions of confinement, the inmate-plaintiff "must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). Specifically, Plaintiff must show (1) such an "objectively, sufficiently serious" deprivation that has denied him even "the minimal civilized measure of life's necessities," and (2) a "sufficiently culpable state of mind" on the defendant-official's part, such as "deliberate indifference" to the inmate's health or safety. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001); *see Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985).

### A. Objective Prong.

To fulfill the objective requirement, Plaintiff needs to allege facts to demonstrate that the conditions of his confinement violated contemporary standards of decency and led to "unquestioned and serious deprivations of basic human needs." *Anderson*, 757 F.2d at 35; *see Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002). In cases where the inmate-plaintiff's physical or mental health is at stake, the Court considers whether "a reasonable doctor or patient would find it important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether the condition causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

In the present matter, Plaintiff alleges that his conditions of confinement in SHU were unconstitutionally cruel because his cell was between the "mentally ill" inmate who had assaulted Plaintiff and "another violent mentally ill person." (C at 14.) Plaintiff further alleges both of his neighboring cellmates were "known throwers of feces, urine," who rendered "air in the area smell of excreta." (*Id.*; Pl. Opp. at 3.) As a result, Plaintiff "was deprived of sleep for months." (C at 14.)

While these allegations depict an extremely unpleasant living condition, they are insufficient to establish a constitutional violation. Generally, society does not intend prison conditions to be comfortable; thus, only extreme deprivations are sufficient to sustain a conditions-of-confinement claim. *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999). Noisome odor, distressing noises, and emotional tolls associated with threats from a former assaulter—while odious—do not inherently and unquestionably deprive Plaintiff of basic human needs. *See Mabery v. Keane*, No. 95 Civ. 1093 (JFK), 1998 WL 148386, at *8 (S.D.N.Y. Mar. 30, 1998) (holding that an inmate's allegation that he had to breathe fumes from a nearby sewage plant failed to state an Eighth Amendment cause of action). Furthermore, with the Complaint interpreted liberally, Plaintiff alleges such conditions impacted his physical health, insofar as he "was deprived of sleep for months." (Pl. Opp. at 3.) However, as another court has stated in this District, while "sleep is critical to human existence," the allegation of sleep deprivation, without more, is insufficient for the objective prong of an Eighth Amendment conditions of confinement claim, absent further allegations of serious harm or injury. *Semprit v. City of N.Y.*, 15 Civ. 09932 (PAE) (JCF), 2016 WL 4990259, at *3 (S.D.N.Y. Aug. 5, 2016) (citing *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013)). The "alleged deficiencies must cause or threaten sufficiently serious harm." *Id.* Here, nothing Plaintiff alleges appears to amount to significant harms that would warrant medical attention, impair Plaintiff's "daily activities," or generate "chronic and substantial pain." *Chance*, 143 F.3d at 702. For the foregoing reasons, Plaintiff's alleged facts are insufficient to support a plausible claim that his conditions of confinement were objectively in violation of his Eighth Amendment rights.

### B.  Subjective Prong.

Though substantially rendered moot by Plaintiff's failure in the objective prong, this Court also notes that Plaintiff's pleadings cannot satisfy the subjective prong. To do so, Plaintiff must

allege enough facts to show each defendant-official has "a sufficiently culpable state of mind," typically "deliberate indifference." *Gaston*, 249 F.3d at 164; *Sanders v. City of N.Y.*, 16 Civ. 7426 (PGG), 2018 WL 3117508, at *6 (S.D.N.Y. June 25, 2018). Specifically, there must be facts alleged to show that the defendant-official both "kn[e]w[] of and disregard[ed] an excessive risk to inmate health or safety," or was otherwise "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [in fact did] draw that inference." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

In the present case, the facts presented do not support a finding that the Defendants acted with the requisite mental state. Nothing pled suggests that Defendants Gutwein and Story actually knew of the conditions present in his cell. While Plaintiff does allege that Defendant Griffin knew that "mentally inmates were in SHU throwing excrement on prisoner/staff through information given to him during his tours in the area, and reports sent directly to him," he fails to allege that Griffin actually knew or could otherwise infer from facts that Plaintiff faced "an excessive risk" to his health or safety. (Pl. Opp. at 3.) Absent factual allegations to that effect, Plaintiff has not sufficiently alleged that Defendants acted with the culpable state of mind to sustain an Eighth Amendment claim.

Accordingly, Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's conditions of confinement claim pursuant to the Eighth Amendment is GRANTED. This claim is dismissed without prejudice.

## IV.    FOURTEENTH AMENDMENT DUE PROCESS VIOLATION

Plaintiff alleges that he was not afforded appropriate process before and during the disciplinary hearing that sentenced him to 150 days of confinement in SHU, in violation of his Fourteenth Amendment procedural due process rights. Specifically, Plaintiff alleges Defendant

Gutwein, acting in the capacity as the Special Hearing Officer, denied Plaintiff the opportunity to present documentary evidence and witness testimony during the hearing. (C at 13.) Furthermore, Plaintiff alleges that Story, in her capacity as the Offender Rehabilitation Counselor, failed to help Plaintiff prepare for the hearing by procuring documents and conducting a witness interview at Plaintiff's request. (*Id.*) The Defendants argue that the pleaded facts in Plaintiff's Complaint fail to support a valid claim that Defendants violated Plaintiff's Fourteenth Amendment rights upon which relief may be granted. (M.T.D. at 10.)

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a procedural due process claim, Plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted). Reading the Complaint liberally, Plaintiff appears to allege he was deprived of liberty interest due to his SHU sentence, without due process.

To determine whether a disciplinary action violates the inmate's protected liberty interest, this Court must consider whether the "discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Specifically, the Court should weigh "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions" as well as the "duration of the disciplinary segregation compared to discretionary confinement." *Id.* While recognizing that unusually long SHU sentences can by themselves constitute atypical and significant hardships, the Second Circuit has ruled that SHU confinements of between 101 and 305 days with "ordinary prison conditions" do not qualify as

such. *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004). Indeed, in cases that lack the showing of atypically harsh conditions of confinement, this Court has held that 150 days or 136 days of SHU sentences are insufficient for the inmate to claim liberty interest violations on duration grounds alone. *Trice v. Clark*, 94 Civ.6871 (SAS), 1996 WL 257578, at *3 (S.D.N.Y. May 16, 1996); *Baker v. Finn*, No. 00 CIV. 3886 (DC), 2001 WL 1338919, at *3 (S.D.N.Y. Oct. 31, 2001).

In the present case, Plaintiff's disciplinary charge resulted in 150 days of SHU confinement, which Plaintiff alleged was "outside of the guideline range." (C at 13.) As discussed, Plaintiff cannot rely on the SHU sentence's duration alone to establish that it constituted an atypical, significant deprivation of Plaintiff's liberty interest under Second Circuit jurisprudence. *Palmer*, 364 F.3d at 65; *see also Trice*, 1996 WL 25757, at *3. Instead, Plaintiff must allege facts to establish that the conditions during the confinement differed from ordinary prison conditions. In his Complaint, Plaintiff alleges that while in SHU, he was also subject to "loss of good time, commissary, packages and phone privileges." (C at 13.) Yet these restrictions are considered typical conditions during SHU confinement, which Plaintiff should have reasonably expected. *See Marcus v. Annucci*, 20-CV-06234 (PMH), 2022 WL 280935, at *6 (S.D.N.Y. Jan. 31, 2022) (finding no constitutional violation in a SHU sentence that involves, *inter alia*, the loss of "recreation, packages, commissary, and phone privileges for ninety days"). Compared with ordinary prison life, the loss of such privileges may amount to undeniable inconveniences, but not significant hardships. This Court is unable to infer from such alleged facts that Plaintiff's confinement in SHU was so atypical, harsh, or burdensome that it violated his liberty interest.

Plaintiff's allegations may be construed to suggest that he endured atypical and significant hardships while in SHU to the extent that he was placed between two "violent mentally ill person[s]," who were both "known throwers of feces, urine" and "banged on his wall at all hours

and constantly threatened him." (C at 14.) Plaintiff may indeed have a better claim that these disturbances amounted to significant hardships to the extent that his life would appear hardly tolerable, as the "air in the area smell[ed] of excreta" and he was "deprived of sleep for months." (Pl. Opp. at 3.) However, this Court is unable to infer from the factual allegations that such unpleasant conditions are atypical of prison life. *See Grant-Cobham v. Martinez*, 20-cv-1947 (BMC) (LB), 2020 WL 2097807, at *3 (E.D.N.Y. May 1, 2020) (holding that the combination of fellow inmates' throwing of feces and all-day screaming noise, terrible smells of garbage and smoke, and verbal abuse by prison personnel represents the ordinary, "unpleasant aspects of prison conditions"). Plaintiff does not make further allegations to detail the frequency or severity of his neighboring-inmate's throwing of feces and urine and threats. Plaintiff must make sufficient allegations to show "his living conditions reflect a level of deprivation that is cognizable under [the Constitution]." *Id.* at *3 (listing some of the "considerations that man the gate between mere discomfort and a lack of 'humane conditions of confinement.'" (quoting *Willey v. Kirkpatrick*, 801 F.3d 51, 66 (2d Cir. 2015)). Therefore, Plaintiff's factual allegations are insufficient to support a claim that Plaintiff's liberty interest has been violated through placement into SHU.

This determination moots the procedural question of whether Plaintiff's putative deprivation of liberty interest was without a constitutionally sufficient process. Nevertheless, this Court notes that inmates only enjoy a small set of due process protections, incomparable to the "full panoply of rights due to a defendant in a criminal prosecution." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). For example, the inmate has neither the right to counsel, nor that to confrontation at disciplinary hearings. *Id.* at 567–70. What the inmate is entitled to includes advance written notice of the charges against him, a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence, a fair and impartial hearing officer, and a written

statement of the disposition (including the evidence relied upon and the reasons for the disciplinary actions taken). *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). In the present case, Plaintiff was provided with advance written notice of the charges, the opportunity to appear and to put on a defense, and a written statement of the findings. (C at 13.)

Plaintiff also stated that Gutwein committed "continuous violations of prisoner's right," including "violat[ing] [Plaintiff's] rights." (C at 15.) Read in the most favorable light, Plaintiff appears to allege that the appointment and affirmation of Gutwein violated Plaintiff's procedural right to "a fair and impartial hearing officer." *Sira*, 380 F.3d at 69. Yet the barebone, conclusory statement contains too few factual details for the Court to draw inferences and assess plausibility. In particular, Plaintiff did not allege facts to show that Gutwein was unfair or partial, except that Plaintiff did not agree with his ruling. Additionally, Plaintiff claims "Gutwein denied documentary evidence + witness testimony at hearing," without any further details or explanation. (C at p. 13.) While a reasonable opportunity to call witnesses and present documentary evidence is indeed a prisoner's procedural right at disciplinary hearings, Plaintiff's factual allegation on this issue is simply too conclusory to survive a Rule 12(b)(6) motion. *Twombly*, 550 U.S. at 555.

Furthermore, Plaintiff alleges that Story remained deliberately passive as Plaintiff's assistant and failed to procure documents and interview a witness as Plaintiff requested. (C at p. 14.) It is true that "[p]rison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges," and "the assistance must be provided in good faith and in the best interests of the inmate." *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir.1988). While the prisoner's requests may be selectively executed in good faith if they are "too numerous," as the Second Circuit has ruled, "an assigned assistant who does nothing to assist [the prisoner under disciplinary charges] . . . has failed to

accord the prisoner his limited constitutional due process right of assistance." *Id*. at 898; s*ee, e.g.*, *Williams v. Menifee*, No. 07–1439–pr., 592009 WL 1532283, at *61 (2d. Cir. June 3, 2009) (holding that there is no due process violation where the disciplinary committee excluded unnecessary testimony). By alleging that Story "did not[h]ing" for him despite requests, Plaintiff has pleaded enough facts for the procedural sufficiency prong of a procedural due process claim against Story. However, as noted, this issue is moot given the Court's finding that Plaintiff's factual allegations cannot support the claim that his liberty interest has been violated through his placement into SHU.

For the reasons discussed, Plaintiff's Complaint fails to sufficiently allege a claim for procedural due process. Accordingly, Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's procedural due process claim pursuant to the Fourteenth Amendment is GRANTED and this claim is dismissed without prejudice.

## V.    OTHER CLAIMS

Although Defendants do not explicitly address these claims in their motion papers, a liberal interpretation of the Complaint suggests *pro se* Plaintiff seeks to assert claims for malicious prosecution, religious freedom, and wrongful confinement against Defendants. The Court finds that Plaintiff has not sufficiently stated these claims either because the Complaint contains minimal, if any, factual allegations on these issues.

First, reading the Complaint liberally, Plaintiff appears to assert a malicious prosecution claim against Special Hearing Officer Gutwein for finding against Plaintiff in a disciplinary hearing. (C at 13.) But Plaintiff does not allege that he ultimately won the disciplinary hearing or make any factual allegations regarding the motive of Gutwein, as required to sustain such a claim.

20

*See Holmes v. Grant*, No. 03 Civ. 3426 RJH RLE, 2006 WL 851753, at *13 (S.D.N.Y. Mar. 31, 2006) (citing and quoting *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003)).

Second, Plaintiff attempts to assert a religious freedom claim against Defendants but merely states that he "missed Ramadan because of this [SHU] confinement" with no further factual allegations. (C at p. 14.) Without any other factual allegations, this one statement is insufficient to sustain a claim. *See Smallwood-EL v. Coughlin*, 589 F. Supp. 692 (S.D.N.Y. 1982) ("even prisoners in segregated confinement retain substantial rights to exercise their religion . . . [but] plaintiff has neither alleged nor substantiated facts which indicate that the restrictions on plaintiff' religious practices resulting from his SHU confinement violated his First Amendment rights." (citing *LaReau v. MacDougall*, 473 F.2d 974, 979 (2d Cir. 1972)).

Lastly, the Complaint also lists "wrongful confinement" as a cause of action being asserted. It appears to the Court that Plaintiff is attempting to raise a claim that is duplicative of his conditions of confinement and due process claims. Accordingly, this claim also fails.

## VI.   PERSONAL INVOLVEMENT

Defendants argue that Plaintiff has failed to adequately allege Defendants Griffin and Venettozzi's personal involvement in the constitutional violations, as required to state a Section 1983 claim against them in their individual capacity. (M.T.D. at 13.) Specifically, it is insufficient for Plaintiff to allege a Defendant's supervisory role or "linkage in the prison chain of command." *Ayers*, 780 F.2d at 210. Instead, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits," there must be enough pleadings to show that "each Government-official defendant, through the official's own *individual actions*, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 662) (emphasis added).

As the Second Circuit has noted, "after *Iqbal*, there is no special rule for supervisory liability." *Tangreti*, 983 F.3d at 618. To establish personal involvement, the plaintiff must "establish that [the defendant] violated the [Constitutional rights in question] by [his] own conduct, not by reason of [his] supervision of others who committed the violation." *Id.* at 619.

Plaintiff alleges in his Complaint that Defendant Venettozzi, upon receiving and reviewing Plaintiff's appeal in his capacity as the Director of Special Housing, affirmed the hearing officer's conclusions. (C at 14.) Absent further claims, Plaintiff has alleged nothing more than Venettozzi acting in his supervisory role "in the prison chain of command," which is insufficient to establish personal involvement. *Ayers*, 780 F.2d at 210.

Furthermore, Plaintiff alleges that Defendant Griffin, who is "responsible for the conduct of prison disciplinary hearings," "should have know[n] of Gutwein's continuous violations of prisoner's right" because the latter had allegedly violated Plaintiff's rights repeatedly. (C at 15.) This claim alleges nothing more than Griffin's role "in the prison chain of command" and is by itself insufficient to infer his personal involvement. *Ayers*, 780 F.2d at 210. Plaintiff additionally alleges that Griffin had "failed to train and monitor their hearing officers" and "failed to remedy the wrongful act of placing mentally ill prisoners together with other prisoners in SHU or separating them before or after attacks." (C at 15.) While there Plaintiff did allege Griffin's individual failure to act, the Court is unable to infer from the alleged facts that Griffin was "informed of the violation through a report or appeal" or possessed "information indicating that unconstitutional acts were occurring," as needed for rising to the level of "the official's own individual actions." *Tangreti*, 983 F.3d at 616 (quoting *Iqbal*, 556 U.S. at 662).

Plaintiff pleaded additional facts about Griffin in his opposition memorandum. He alleges that "Griffin was negligent in monitoring his subordinates," specifically Defendant Story, in their

"discharge of duty." (Pl. Opp. at 2.) There, Plaintiff can at most be favorably interpreted as attempting to furnish evidence that Griffin was "grossly negligent in supervising subordinates who [otherwise] committed the wrongful acts." *Colon*, 58 F.3d at 873. However, the *Colon* test is no longer recognized by the Second Circuit as good law. *Tangreti*, 983 F.3d at 618; *see Reid v. City of N.Y.*, No. 20-CV-644 (GBD) (JLC), 2021 WL 3477243, at *7 (S.D.N.Y. Aug. 6, 2021) ("In *Tangreti*, the Second Circuit overturned its decision in *Colon*.") Indeed, while the Second Circuit has not definitively ruled out personal involvement based on gross negligence, this Court has ruled in the past that it "impose[s] the exact type[] of supervisory liability that *Iqbal* eliminated." *Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801 (SAS), 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009).

While Defendants' reply memorandum deals with the gross negligence claim in some depth, it leaves unaddressed Plaintiff's allegation in the opposition memorandum that "Griffin knew mentally ill inmates were in SHU throwing excrement on prisoners/staff through information given to him during his tours in the area, and reports sent directly to him." (Pl. Opp. at 3.) Interpreting this statement liberally, Plaintiff appears to allege Griffin had actual knowledge. However, not only is the factual claim terse and nonspecific, but it also seems to only amount to evidence showing that "the defendant, after being informed of the [purported] violation through a report or appeal, failed to remedy the [underlying] wrong." *Colon*, 58 F.3d at 865, 873. As noted above, the Second Circuit has abrogated the *Colon* test and this Court has ruled that this particular category is eliminated by *Iqbal. Tangreti*, 983 F.3d at 618; *Bellamy*, 2009 WL 1835939, at *6. Here, this Court can at best infer from Plaintiff's allegation that Griffin "had subjective knowledge of" Plaintiff's unpleasant conditions of confinement—claims of Griffin's tours and reports fall short of showing that Griffin actually knew of "a substantial risk of serious harm to" Plaintiff, nor

does it suggest that Griffin "disregarded" any "substantial risk of harm." *Tangreti* at 616, 619 (2d Cir. 2020); Pl. Opp. at 3. Thus, this Court must dismiss the charges against Griffin on the theory that he was not personally involved in alleged violations.

Accordingly, the Defendants' motion to dismiss claims against Venettozzi and Griffin in their individual capacities on grounds that there was no personal involvement is GRANTED. Claims against these two defendants are dismissed without prejudice.

## VII.   QUALIFIED IMMUNITY

Lastly, Defendants argue that they should be afforded protection by qualified immunity. (M.T.D. at 14.) The qualified immunity doctrine protects federal and state officials from suit for acts undertaken in their official capacity if "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Wyant v. Okst*, 101 F.3d 845, 857 (2d Cir. 1996); *see Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Since, in the foregoing discussion, the Court finds that Plaintiff has failed to state a claim for a violation of Plaintiff's constitutional rights, the Court does not need to address the issue of qualified immunity presented before it.

## CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss is GRANTED. Plaintiff is granted leave to amend and may replead the claims that were dismissed without prejudice. If he chooses to do so, Plaintiff will have until September 14, 2022 to file an Amended Complaint consistent with this Opinion and Order. Plaintiff is advised that the Amended Complaint will replace, not supplement, his Complaint, so any claims he wants to pursue must be included in or attached to the Amended Complaint. An Amended Civil Rights Complaint Form is attached to this Order. Defendants are then directed to answer or otherwise respond by October 7, 2022. If Plaintiff

fails to file an Amended Complaint within the time allowed, and he cannot show good cause to excuse such a failure, the claims dismissed without prejudice by this order will be deemed dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motion at ECF Nos. 30 and 37. The Clerk of Court is further directed to mail a copy of this Opinion & Order to *pro se* Plaintiff at his address listed on ECF and to show service on the docket.

Dated:  July 28, 2022                                    SO ORDERED:

White Plains, New York

NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____
(Include case number if one has been assigned)


**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                    Middle Initial                    Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                                    State                         Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name            Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                        State                Zip Code

Defendant 2:

First Name            Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                        State                Zip Code

Defendant 3:

First Name            Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                        State                Zip Code

Defendant 4:

First Name            Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                        State                Zip Code

## V.      STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6